UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



Zaire Paige-Bey

As a Natural living flesh and blood soul
presenting this verified Compliant in Pursuant
to 42 U. S. C. 1983 & 1985

Litigant

v.

**AMENDED**
COMPLAINT

JURY
DEMANDED

CITY OF NEW YORK, CITY OF NEW YORK POLICE DEPARTMENT OFFICER
RASHAN LACOSTE, POLICE OFFICER DAVID LAWANCE, ASSISTANT
PROSECUTOR, DARREN ALBANESE, NEW YORK CITY FORMER POLICE
COMMISSIONER RAYMOND KELLY, FORMER CITY of NEW YORK MAYOR
MICHAEL BLOOMBERG, FORMER DISTRICT ATTORNEY CHARLES J. HAYNES,
COUNTY OF BROOKLYN, et al,

Defendants

PRELIMINARY STATEMENT

1.    Zaire Paige-Bey, Moorish American, Ex Rel. ZAIRE PAIGE, who has been

Kidnapped, and held falsely in bondage, violation of the Treaty of Peace and Friendship

of 1787 at Article Twenty and Twenty, signed by the Sultan of Morocco, and the United States

of America, whereby secured protected right under the Fourth and the Fourteenth Amendment

of the Constitution has been violated also.

2.    Warehoused at Southport Prison Correctional Facility, Located at 236 BOB MASIA

DRIVE, POST OFFICE BOX 2000, PINE CITY, NEW YORK 14871-2000, do hereby affirm

Under Penalty of Perjury Pursuant to 28 U. S. C. Sub Section 1746 and Federal rule 43 (d) the

following is true and exact:

3.    This case is a Civil Rights action brought about under Color of Law 1983 for Deprivation

of rights, to vindicate, Zaire Paige-Bey under Amendments: First, Fourth, Fifth, Sixth, Eight, and

Fourteen Amendment for the United States, Constitution through the Civil Rights Act of 1871,

Codified as 42 U. S. C. § 1983.

4.    Litigant, Zaire Paige-Bey Constitutional rights was violated, when Officers of the NEW

YORK CITY POLICE DEAPRTMENT (NYPD) unconstitutionally kidnapped him, and taken

to a location where he was detained, and held in bondage.

5.    Defendants actions including unreasonable and unlawful use of force, as Litigant suffered

deprive indifference under the Eight Amendment.

6.    Litigant seeks an award of compensatory and punitive damages along with cost of fees for

bringing fourth this claim.

7.    Evidence will show, documented information were intentionally withheld, to gain a

conviction, solely against Litigant, although (3) others were arrested alone with Litigant the day of

August 16, 2008 by defendant, Police Officer, RASHAN LACOSTE, and his partner, Officer,

DAVID LAWRENCE.

JURISDICTION/VENUE

8.    This Court has subject matter jurisdiction over federal claims Pursuant to 28 U. S. C. §§

1331, 1348 (3) and (4) 2201.

9.    Venue properly lies in Eastern District Pursuant to 28 U. S. C. §§ 1391 (b) due to the

events given raised to this action occurred in NEW YORK, which is located in the EASTERN

District.

10.    An award of costs is authorized pursuant to 42 U. S. C. §, as I am properly In Propria Persona.

11.    The matter and controversy rises under Section 42 U. S. C. 1983 and 42 U. S. C. 1985.

12.    Litigant, Zaire Paige-Bey is and was at all times kidnapped, detained, and was being held against his will at a County holding Camp, warehoused in what is called County Jail, known as Rikers Island.

13.    The Litigant current address is ZAIRE PAIGE 11-A 2563, B-11-8; SOUTHPORT CORRECTION FACILITY; 236 BOB MASIA DRIVE; POST OFFICE BOX 2000; PINE CITY, NEW YORK 14871-2000.

<u>PARTIES TO THIS ACTION</u>

14.    Name of defendant:

RASHAN LACOSTE, et, al:          Official position Police Officer

    Sued in:  Individual capacity       **Official capacity**

    Address:  1470 East New York Avenue    Brooklyn, New York ~~11213~~ 11212 *AP*

15.    Name of defendant:

RAYMOND KELLY                    **Official position former Police Commissioner, CITY OF NEW YORK**

    Sued in: Individual capacity        **Official capacity**

    Address: Formerly One Police Plaza    New York, New York 10038

16.    Name of defendant

MICHAEL BLOOMBERG                Official position, former Mayor CITY OF NEW YORK

    Sued in: Individual capacity        Official capacity

Address:  Formerly Gracie Masion          New York, New York 10028
17.   Name of defendant

DARREN ALBANESE et, al                    Official position, Assistant District Attorney

  Sued in: Individual capacity            Official capacity

  Address: 350 Jay Street                 **Brooklyn, New York 11201**

18.   Name of defendant:

HARLES J. HYNES et, al:                   Official position Former, District Attorney

  Sued in:  Individual capacity           **Official capacity**

  Address:  Formerly 350 Jay Street       **Brooklyn, New York 11201**

19.   Name of defendant:

DAVID LAWRENCE                            **Official position Police Officer**

  Sued in: Individual capacity            Official capacity

  Address:  1479 East New York            Brooklyn, North narcotics


## STATEMENT OF FACTS


20.    On August 16, 2008, as Litigant was up stairs on the second floor of the residence

visiting his child family, located at 2050 Strauss Street, in the Brownsville Section of Brooklyn,

New York, Police Officer, RASHAN LACOSTE, along with his partner, Police Officer DAVID

LAWRANCE of the 73ʳᵈ Precinct, Police Department created a loud disturbance, after chasing a

would be suspect onto the first floor, inside of said residence.

21.    Defendant LACOSTE, without a warrant or permission entered the up stairs second

floor where he began searching when he came upon Litigant. Cook v. Hastings 150 Mich. 289, 114

N. W. 71, 72, (1907)

22.   Defendant LACOSTE and his partner, defendant DAVID LAWRENCE, then singled

Litigant out, by harassing in retaliating against him, in response to their knowledge of

Litigant past encounters, resulting from previous filed Complaints made, as well as Complaints

made against other Officers at the 73rd Precinct concerning use of excessive force, and by regular

being "Stopped and Frisk".

23.   As Litigant were being singled out by defendants, LACOSTE, and LAWRENCE,

other unknown Officers, were arriving on the scene did the same, as family members at the

residence, objected to the behavior of treatment towards Litigant, stating "He did not do anything,

as well, as Litigant, also commenting, "I did not do anything".

24.   Defendant LACOSTE replied, "You know what you did", "Your know what this is

about", "You are coming down stairs and your name would be run for warrants".

25.   After, arrival of Litigant with LACOSTE and LAWRENCE on the first floor, defendant

LACOSTE immediately asked fellow Officers for a set of handcuffs putting Litigant in constraint.

26.   In the process of being handcuffed, Litigant asked LACOSTE, What am I being

Detained for? Adding, "I do not have any warrants".

27.   Defendant's LACOSTE and LAWRENCE, as well, as the other fellow Officers from the

73rd Precinct continued to search the house.

28.   Upon the conclusion of the search the Defendants, then proceeded to remove Litigant

from the location, along with the would be suspect Arron Reed, and escorted them both to the

back seat of an unmarked car, still not notifying Litigant, as to the reason of his being kidnapped.

29.   At no time were Litigant informed of any rights, nor read his Miranda Rights.

30.   After, several hours being captive and being held in bondage illegally, at the 73rd Precinct,

Defendant LACOSTE then proceeded to interrogate Litigant, stating "There is no lawyer, who can

help you", "Only I can help you, help yourself", and "If you don't help me, everything found

in that house would be charged against you".

31.    Litigant then responded, "I don't have anything to do with what was found in that house, and you know that", "None of it is mine"

32.    As a result of Litigant exercising his First Constitutional right, to speak in the presence of an Attorney instead, and stating his innocence defendant, LACOSTE acted on each and every threat; violating, Litigants right under the color of law by depriving him of his Fifth, and Fourteenth Amendment right, as he was later subjected to undo Justice of a strip search, whereby, Litigant were then charged with the crime.

33.    Defendant LACOSTE filed false felony Complaint charges against Litigant, after being escorted into a enclosed wrought iron space, and held in bondage being denied water and food.

34.    When Litigant asked defendant LACOSTE for water, defendant replied "You will get it when you get to Rikers", as Litigant was eventually transferred from the 73rd Precinct, to the County Central Booking, located in the down town section of Brooklyn, New York.  While he was confronted again to harsh and cruel, punishment were being subjected, as well, as filthy condition of the enclosed confinement, which resulted in mental and emotional distress to Litigant, not being able to eat, sleep, nor able to make contact with his family, as he was told by defendant, LACOSTE "Don't worry", "I'll help raise your daughter", "You know you can count on me".

35.    Defendant, and his partner, DAVID LAWRENCE who works in what is known as "Special task Force", his actions in retaliation and harassment, against Litigant is the results of Officers improperly being train and a lack of being properly supervised by the Corporation Former Police Commissioner, RAYMOND KELLY, who bears responsibility for Law Enforcement for the CITY of NEW YORK.

36.    Officer LACOSTE made false accusation before the grand Jury, to maintain his agenda

to frame Litigant.

37.    Litigant contends the pre-litigation function that a Prosecutor must perform (i) the Supervision and interaction of Law Enforcement agencies acquiring evidence, which might be used properly to Prosecute and (ii) the Organization, evaluation, marshalling of this evidence into the form, that is to enable the Prosecutor to try a case, seek a warrant, indictment or order.

38.    These functions were violated by the defendants in this case.

39.    The Defendant former District Attorney CHARLES J. HYNES exercised deliberate Indifference, allowing the defendants LACOSTE, and LAWRENCE to exercise policies and practice of filing complaints falsely, wherein it was known by them, that it was forbidden to make such, when filing a felony Complaint to 210.45, which states false statement are punishable as a class "A" misdemeanor, knowing this fact, Defendants former, District Attorney CHARLES J. HYNES, and Assistant District Attorney ALBANESE allowed Police Office LACOSTE, and Police Officer LAWRENCE to perjure false statements to intimidate, harass, retaliate illegally against Litigate to stand as legitimate acts.

40.    At all times defendant, former, Mayor Michael Bloomberg, Mayor of the CITY of NEW YORK was responsible to manage by maintaining a continence and otherwise over all conducting the everyday operation under the Supervision of the former, District Attorney CHARLES J. HAYNES who is the sole responsible individual of the District Attorney Office for training, Supervisor, operational practices and policies implemented by NEW YORK CITY Police Department.

41.    NEW YORK CITY former, Mayor MICHAEL BLOOMBERG owned, operated; managed and Supervised, other wise over all conducted the everyday "For profit" business operation of thee Police; Law Enforcement and agents activities, and is the sole responsible party for their training, Supervision of operation, and Managements of the said NEW YORK CITY

Police Department.

42.    Defendant, former Mayor, MICHEAL BLOOMERG was fully aware of the actions of

defendants, Officer LACOSTE, and Officer LAWRENCE, making false statements concerning

felony Complaints to retaliate, harass, and intimidate the Litigant.

<u>FIRST CAUSE OF ACTION</u>

43.    Litigant re-alleges and incorporates by referencing his allegations in Paragraph 01-42, as if

fully stating herein.

44.    Litigant was retaliated against, because a Complaint was filed against Defendant, and by

his refusal to work for the 73ʳᵈ Police Department, as a "INFORMANT",(being a snitch) Aa

violation of Litigant First, Fouth, and Fourteenth Amendment right.

45.    The action of defendants, Officer LACOSTE, Officer LAWRENCE, to blame all

evidence upon Litigant was for the intended purpose to satisfy their hatred against Litigant, as well,

as to satisfy a vendetta on behalf of the other Officers, who was involved in the use of excessive

force against Litigant also.

46.    Defendant LACOSTE is known to cause excessive force upon a perpetrator he kidnaps.

47.    Defendant LACOSTE exercised indifference towards Litigant knowingly, after he learned

he was the subject of Complaints being filed by Litigant.

48.    Defendant LAWRENCE exercised indifference towards Litigant when he knew he was

the subject of Complaints filed by Litigant to a crime scene after he unlawfully planted false

evidence for unlawfully kidnapping of Litigant, to be tried for false charges.

49.    Defendant LACOSTE, and LAWRENCE acted in concert in furtherance of each other

Illegal acts knowingly, willfully and perjuring themselves when testifying falsely at Litigant criminal

trial in an effort to support their false charges filed in their felony Complaint, against Litigant.

50.    Former Defendant CHARLES J. HYNE, and defendant ALBANESE, acting in the roles

of District Attorney and assistant District Attorney knew, their obligation were to investigate fully

the evidence and information submitted to them by Police Officers, LACOSTE and

LAWRENCE before seeking charges against Litigant.

51.    During questioning, Assistant District Attorney, ALBANESE over zealous behavior

asserted guilt towards Litigant, as he attempted to displayed Litigant as being one to be considered

dangerous, who should never be given an opportunity of having Liberty again.

52.    Defendant ALBANESE, during questioning of the mother for Litigant infant child,

reference of her, by stating she was "WORTHLESS".

53.    Reckless prosecution by DARREN ALBANESE were the results of malicious rumors

by RASHAN LACOSTE during testimony, who hated Litigant due to filing "Excessive force"

complaints.

54.    Defendant ALBANESE trial of case were delivered with malice, as he revealed overtly

a display of being over anxious, as his aggression was obvious during adjudication of Litigant.

55.    Elements of manufactured evidence testified to, during trial by RASHAN LACOSTE

were previous stated under indictment 4798/09.

56.    Deliberate indifference to Litigant appearance were remarkable, as he was intentionally

presented to count for trial, as if homeless, living on the streets, being picked up from there, and

brought straight to court without access to basic toiletries.

57.    This intentional act were to primarily betray Litigant character, as being other than who

he really were - by design plan, when it was the responsibility of Deputy Warden Moore at County

Jail who denied him access to clothing provided for presentment to court.

58.    This event transpired, coincided with Litigant being bought into court with arm in a cast;

badly bruised blood stained eye; and deep contusion on the wrists, resulting from the body weight

of being swung about by the handcuffs used while being savagely beaten by (7) prison guards

wearing helmets, it was after this act he appeared at court with his hand cuffed, wearing chains and

shackles.

59.    This attempt to humiliate Litigant way were with deprived indifference, violation

Litigant Eighth Amendment right, and purposely creating a Thirteenth Amendment Slave in

Servitude, by invoking this vicious act, as to punish, as Litigant used his forearms to hold up

his trousers, due to being denied a belt, and being in constraint of the chains, restricted his

limitation of mobility.

60.    This Conspiracy to falsify, Litigant character was in disguise after several attempts to cause

his Genocide, were used – falsely by manufactured evidence to justify their action of this set up.

61.    The defendants former District Attorney, CHARLES J. HYNES, and DARREN

ALBANESE knew of this fact, which is why they distortion of the truth was allowed, as they too

knew the truth must be sought of the matter presented to them, of which they also knew it was

mandatory for them to do so, before deciding if charges were to be bought against Litigant.

62.    Defendants deliberately with deprived indifference unlawfully, with intent, failed to

conduct a proper and through investigation; as to intentional allow LACOSTE and LAWRENCE

to bring these false charges against Litigant, knowing it to be false in their quest to suppress the true

facts of their filing false Complaints, in attempts of a cover it up.

63.    All Defendants were conspirators in this cover up, involving a broad spectrum of Law

Enforcements groups to include, Officers of the court, to quell information of their inappropriate

acts, of wrong doings, along with their purposeful intention to deprive Litigant of his liberty; who

informed family member, and friends of their intention to do so by member of 73rd Police Precinct

of their intent of making sure he never get out of prison. Litigant friends were also being confronted with harmful taunts of intimidation, such as "You better watch you back or you'll get a bullet in it".

64. Defendants LACOSTE and LAWRENCE deliberately, ignored Litigant by taunts, asking "Are you hungry", then refused to provide food to him; water was too denied, when asked for by Litigant, during his more than 16 hours in their custody.

65. Defendants denied Litigant the right to communicate with counsel, as well as with his immediate family. Litigant was tightly handcuffed, causing his wrist to be in pain for several months imposing cruel and inhuman punishment upon Litigant.

66. Litigant was humiliated by being stripped search, brought out in hand cuffs in front of his crying infant daughter, which caused not only embarrassment, but mental and emotional distress. Defendant LACOSTE statement to Litigant were "Don't worry I'll help raise your daughter while You are locked up for 10 years"

67 Not only was Litigant brought out in handcuffs in front of his crying daughter, family and friends, but in front of residents of the community.

68. Litigant suffered emotional and mental distress due to the actions of the defendants, LACOSTE, and LAWRENCE.

69. When defendants knowing, that it was summer, still placed Litigant in an dirty holding cell that had no proper ventilation, nor air conditioning, or working facilities such as the bathroom and water fountain.


## SECOND CAUSE OF ACTION


70. Unlawful Arrest: Fourth, Fifth, Fourteenth Amendment violation.

71.    Litigant re-alleges and incorporates by referencing his allegations in paragraphs (1-69) as if fully stating herein:

72..    The defendants LACOSTE and LAWRENCE acting together in concert, conspired to violate Litigant Constitutional rights with malicious cruelty, and by falsely kidnapping Litigant without probable cause.

73.    Conspiracies committed by defendants of Official misconduct, were shared responsibility causing the injury to Litigant by creating falsely felony crimes against him.

74.    The defendants intentionally violated plaintiff Constitutional rights.  These rights protected by First, Fourth, Fifth, Sixth, Eight and Fourteenth Amendments of the United States of America Constitution.

75.    The defendants singled out and deliberately targeted Litigant violating Litigant rights to equal protection of the law when Litigant was hand cuffed and kidnapped on false charges.

76.    The defendants Officer LACOSTE and Officer LAWRENCE at all times acted under the Color of State Law and in furtherance of they're employment when these acts were performed.

## THIRD CAUSE OF ACTION

77.  Cruel and unusual punishment eight Amendment right violation Litigant relentless and incorporates by referencing his allegations in paragraphs (1-76) as if fully stating herein:

78.    Defendants LACOSTE and LAWANCE then interrogated Litigant for several hours on

and off, after Litigant refused to speak without an attorney presence, defendants LACOSTE and LAWRENCE became upset.

79.    Defendant LACOSTE then cuffed Litigant wrists tightly behind the back removed Litigant from interrogation room and place Litigant in a Single holding cell, subjected Litigant to a strip

search where defendant humiliated Litigant.

80.    Litigant was then left in a holding cell for several hours during the high humidity summer

intentional without access to a window or proper ventilation.  Litigant asked defendants,

as well, as other Officers at the 73rd Precinct several time for drinking water, and was denied.

Litigant were never afforded water until he arrived at CENTRAL BOOKING another prison

warehouse where living souls are kept underground located in the downtown section of

Brooklyn, New York.

81. Defendants LACOSTE, and LAWRENCE held Litigant in their custody for several hours

without providing Litigant access to food, after several hours, and numerous request for food,

water and communication with concerned family, defendant LACOSTE stated "You'll talk to your

family and eat when you get to "Rikers Island".

### FOUTH CAUSE OF ACTION EQUAL PROTECTION OF THE LAW

82.    Litigant re-alleges and incorporates by referencing his allegation in paragraphs (1-81) as if

fully stating herein:

83.    Litigant contend that defendants LACOSTE and LAWRENCE actions were without

sound reasoning, and irrational judgment, where they singled out Litigant for harsh treatment,

arbitrary, solely because Litigant had been a "Labeled Gang member", with a criminal past, who

refused to give information to defendants, violating his Sixth Amendment.

84.    Defendants actions, believed to be sufficient to trigger prong of a class of one equal

protection claim and arbitrary treatment of Litigant.

85.    Defendants LACOSTE and LAWRENCE, as well as others Officers at the 73rd Precinct

relied on information from the Federal Bureau of Investigation to target, not only Litigant, but

his family, and friends, as well as his grand mother home and work place.

86    Defendants singled out Litigant to be a gang member.  The defendants knowingly and willingly harassed Litigant on numerous occasions with surveillance of Litigant movements, subjecting Litigant to daily stops and frisks sometimes at gun point.

87.  These unlawful searches were due to defendant LACOSTE hatred towards Litigant. Defendant LACOSTE at times attempted to go in Litigant anal area in search for drugs, while Litigant was in handcuffs, during t unlawful searches.

88    These unlawful searches, caused Litigant to be in a constant state of paranoia, fearing that an plot to cause his arbitrary Genocide, or serious injury.

89.    Defendants LACOSTE and Officer LAWRENCE willfully with intent falsely testified to manufactured charges created against Litigant during trial, under Indictment 10896/08. Defendant LACOSTE committed perjury at (2) separate trials to include Indictment 4798/09) knowingly, willfully with full knowledge of his perjuring himself in an attempt to achieve a unlawfully conviction.  The defendants knew it was forbidden to make false testimony under oath. which violated Litigant due process, and Litigant equal protection against discrimination.

90.    Due to deliberate discrimination from defendants Officer LACOSTE and Officer LAWRENCE, as well as other known and unknown Officers from the 73rd Precinct, subjected Litigant purposefully to being "Strip Searched", as during such with weapon pointed directly at

Litigant, having been tightly cuffed with his hands behind his back; this behavior cause concern to Litigant family, due to the harassment specifically aimed toward Litigant place where Litigant child resided.

91.    Defendant LACOSTE intentionally subjected Litigant to emotional, and mental stress. Litigant at no time posed any risk to DEFENDANTS to assume Jurisdiction of their actions.

## FIFTH CAUSE OF ACTION MUNICIPAL LIABILITY for Policies, Customs, and POLICES OF THE District Attorney

92.    Litigant re-alleges and incorporates by referencing his allegations in paragraphs (1-91) as if fully stating herein:

93.    Litigant contends defendants the CITY of NEW YORK CITY POLICE DEPARTMENT; under the supervision of former Mayor MICHAEL BLOOMBER; former Police Commissioner, RAYMOND KELLY, and District Attorney CHARLES J. HYNES all acted with Deliberate indifference towards Litigant for failing to up hold the goals of the NEW YORK CITY POLICE DEPARTMENT in the county of kings and the District Attorney must direct the Effort to truth seeking and impartial administrative objectives where defendant NEW YORK CITY, Law Enforcements Officials has violated Litigant secured protection under the Constitution. The Administrative processing investigative prongs intentionally distortions of truth seeking process.

94.  Defendant NEW YORK CITY, former MAYOR MICHAEL BLOOMBERG acted with Indifference toward Litigant for the legislation that it acted upon, which cause the discrimination against Litigant on the bases of his non-suspect classification, where as defendants LACOSTE,

and LAWRENCE, are Police Officer in the County of Kings knew Litigant had nothing what so ever with contraband found, but still they singled out Litigant bringing him down stairs to a crime scene, as a non suspect, later kidnapping; bringing fraudulent charges against him, later testified by giving perjured testimonies to their own false charges.

95.  As a Municipal Corporation, NEW YORK CITY actions of deliberately exercising Indifference, due to Policy enforced by the former District Attorney CHARLES J. HYNES acting

as a Policy maker for it, allowing defendants Police Officer LACOSTE and Officer LAWRENCE to file false felony Complaint charges, and to testify falsely under oath violated all of Litigant secured rights of the Constitution.

96.     As a result defendants former CHARLES J. HAYNES and DARREN ALBANESE directing defendants LACOSTE, and LAWRENCE to kidnap and illegally detain Litigant without cause upon false charges and perjured statements, causing Litigant to suffer unlawful confinement, mental anguish, and emotional distress; a violation of his Constitutional rights.

97.     Litigant contends, NEW YORK CITY former Mayor MICHAEL BLOOMBERG, and former Police Commissioner RAYMOND KELLY can be held liable based upon its long history of gross negligence disciplinary practice regarding Law Enforcement personnel, which give raise to the defendants LACOSTE, and LAWRENCE conduct in promoting malicious prosecution of Litigant.

98.  Defendant former District Attorney CHARLES J. HYNES acted with deliberate indifference toward Litigant of his gross negligence, by failure to supervise, and train Assistant District Attorney DARREN ALBANESE, regarding his obligation properly investigate, and carry out the truth seeking process, especially where defendant former District Attorney CHARLES J. HYNES failed to discipline Assistant District ALBANESE, when he became aware he was allowing DEFENDANTS to file false charges, who later perjured themselves.

SIXTH CAUSE OF ACTION, KINGS COUNTY 73RD PRECINCT FAILURE TO TRAIN, SUPERVISE and FAILURE to DISCIPLINE

99. Litigant re-alleges and incorporates by referencing his allegations in paragraphs (1-110) as if stated fully herein:

100.     Litigant alleges that the Police department and Kings County failed to train and supervise

Police Office LACOSTE, and LAWRENCE in areas of obligation not to commit or suborn perjury and the duty not to file false charges.

101. Kings County and members of the 73rd Precinct acted with indifference where they, Police Department had the obligation to train and supervise Officer LACOSTE, and LAWRENCE not to commit perjury by filing false charges or aid in the prosecution of the innocence. Further the defendants has a obligation to discipline the Officers for filing false charges and making perjured statements therein and testifying falsely on the witness stand at (2) separate trials, which the defendants Kings County and 73rd Precinct was fully aware of the acquittal of all of those false charges in the false Complaint put in indictment # 10896/08.

102. The defendant MICHAEL BLOOMBERG, former Mayor of the CITY of NEW YORK exercised deliberate indifference in his position, as Mayor where he knew that his subordinate had been following his unwritten Policies, and practices in an effort to achieve a conviction by taking the stand, and committing perjury testifying falsely under oath on the stand. The defendant is liable for the gross negligence of its employees, Police, servants, agents, and all other Officials.

103. The defendants created a Policy or custom under, which unconstitutional practices occurred and, allowed such policy of customs to continue, and was grossly negligent in

supervising subordinates who committed these wrongful acts upon Litigant.

104. The defendants MICHEAL BLOOMBERG, former Mayor of the CITY of New York, Kings County, and members of the 73rd Precinct and the CITY of New York exercised deliberate indifference by knowing defendants Officer LACOSTE and OFFICER LAWREMCE RAYMOND KELLY, former Police Commissioner, former District Attorney CHARLES J. HAYNES and Assistant District Attorney DARREN ALBANESE, acted under their Jurisdiction

by creating public Policies and Practices known to discriminate against the due process of rights of

Litigant.  Aware of these unlawful acts, of their subordinates the Mayor nor the CITY of New

York, Kings County or 73rd Precinct did not step in to do anything to correct the matter; they just

stood by and let the Litigant suffer.

## RELIEF REQUESTED

Wherefore, Zaire Paige-Bey praise for Judgment in favor against each defendant as follows:

105.    Litigant demands a Jury of his peers.

106.    Injunction order/for the court to order the defendants to establish Policies to respect the

protected rights of due process, under the United States Constitution.  Also a permanent removal

from duty of each defendant found liable of any claim alleged.

107.    Declaratory Judgment Pursuant to 28 U. S. C. Sub Section 2201 against all defendants.

108.    Punitive damages in the amount of 50, 000, 000 in silver or gold.

109.    Compensatory damages in the amount of 20,000,000 in gold or silver

110.    Attorney fees, cost of court fees, along with any additional relied this court may deem just

and proper.


## VARIFICATION STATEMENT

Litigant has read the contents of this Complaint being duly sworn say that the foregone is well

known to him, and that the same is true and exact to all matters therein stated on information and

belief to the matter he believed to be true, the whole truth and nothing but the truth.


Date: ~~February ~~, 20014~~    *April 21, 2014*

I AM *Zaire Paige-Bey*
     Zaire Paige-Bey
     Natural Person
     In Propria Persona
     Not to be confused with Pro Se
     All rights reserved

MEMORANDUM OF LAW


Title 18 U. S. C. Code, Section 4 Misprision of felony; Title 18, U. S. C. Section 241 conspiracy against Rights; Title 18 U. S. C. Section 242 Deprivation of rights under color of law; Title 18 U. S. C. 1621, violation of office; U. S. v Price Miss. 1066, 86 S. Ct.1552, 383 U. S. 787, 16 L Ed 2F 267 prohibit Conspiracy to injury; U. S. v cross W. D. Pa 1995, 899 F. supp. 1410 under statute prohibiting Conspiracy against civil right; Brown v U. S., C. A. 6 (ten) 1953 204 F. 2d 247to willfully deprive of rights to immunities secured by U. S. C.; 42 U. S. C Section 1985 Conspiracy to interfere with civil rights; Daugherty v. Ellis, 142 w. Va. 340, 357-8, 97 S. E. 2d 33, 42-3 (W. Va. 1956);York Times Co. v. Sullivan media use to intentional betray falsely; Brown v State (1951) 238 S. W. 2d 787, 33; States v Lavasco (06/09/77) 431 U. S. 783, 97 S. Ct. 2044, 52, L Ed. 2d 752 based on conflicting testimony at trial; U. S. v Will 449 U. S. 200, 216 S. Ct. 471, 66 L. Ed 2d 392, 406 (1980; The United States supreme Court has bas repeatedly held that any judge who acts without jurisdiction is engaged in an act of treason; Cohens v Virginia, 19 U. S. (6 wheat) 264, 404, 5 L. Ed. 257 (1821); 18 U. S. C.2382 "Misprision of Treason" 5 U. S. C 556 (d), 557 and 706 once due process is denied all jurisdiction ceases; 18 U. S. C. "Mail Fraud"; 18 U. S. C. 1000 Fraud; 18 U. S. C. 514 "Fictitious Obligation" prohibited; "JAG" in "Admiralty Jurisdiction" 28 U. S. C. 1333; 18 U. S. C. 891-894 Extortionate Credit Transactions; 18 U. S. C. 1961 Definitions of "Racketeering Activities"; 18 U. S. C. "Wire Fraud"; 18 U. S. C. 1951 Interference with commence; Article LXX (70) Section 5407, 5403, Barbier v Connolly, 113 U. S. 27, 5 S. Ct. 357, 28 L. Ed. 923 (1885). 27, C. F. R. 72.11 (code of Federal Regulation), "Merritt v Hunter, C. A. Kansas 170 F2d 739. Wuest v Wuest, 127, P2d 934, 937, U. S. V. Koon.




THE MOORISH DEVINE AND NATIONAL MOVEMENT OF THE WORLD          1
Aboriginal and Indigenous Natural Peoples Of North Amexem

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
225 CADMAN PLACE EAST
BROOKLYN, NEW YORK 11201

Affirmation of Service

Zaire Paige-Bey

Plaintiff

                                                    AMENDED

    V

1.  Police Officer RASHAN LACOSTE et, al
2.  Police Officer DAVID LAWRENCE et, al
3.  CHARLES J. HYNES, et, al, former District Attorney, County of Kings
4.  Assistant District Attorney DARREN ALBANESE, et al
5.  CITY OF NEW YORK
6.  MICHAEL BLOOMBER, former Mayor for CITY OF NEW YORK
7.  RAYMOND KELLY  former Police Commissioner for CITY OF NEW YORK

Defendants

   I, Am Zaire Paige-Bey, Natural Person, In Propria Persona Sui Juris Ex Rel ZAIRE PAIGE (not to be confused with, nor substituted by, Pro Se by Unauthorized hands of another). I am Aboriginal Indigenous Moorish American; Possessing Free-hold by inheritance and Primogeniture Status; standing squarely affirmed, aligned and bound to the Zodiac Constitution, with all the due respect and honors given to the Constitution for the United States Federal Government, North

America. Being a descendant of Moroccans and born in America, with the blood of the Ancient Moabites from the Land of Moab, who received permission from the Pharaohs of Egypt to settle and inhabit North-West Africa/North Gate. The Moors are the founders and are the true possessors of the present Moroccan Empire; with our Canaanite, Hittite and Amorite brethren, who sojourned from the land of Canaan, seeking new homes. Our dominion and inhabitation extended from Northeast and Southwest Africa, across the Great Atlantis, even unto the present North, South and Central American and the Adjoining Islands-bound squarely affirmed to the TREATY OF PEACE, AND FRIENDSHIP OF SEVENTEEN HUNDRED AND EIGHTY-SEVEN (1787) A. D. superseded by THE TREATY OF PEACE AND FRIEND-SHIP OF EIGHTEEN HUNDRED and THIRTY-SIX (1836) A. D. between Morocco and the United States. (http://www.yale.edu/lawweb/avalon/diplomacy/Barbary/bar_1866t.htm or at Bevines Law Book of Treaties) the same as displayed under Treaty Law, Obligation, Authority as expressed in Article VI of the Constitution for the United States of American (Federal Government)

I have served an original copy of the attached 42 U. S. C. Section 1983 verified Complaint, with application to proceed with out full prepayment of fees, affidavit and authorizing form, upon the Chief Clerk of the court, UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF NEW YORK, 225 CADMAN PLAZA EAST, BROOKLYN, NEW YORK 11201

Date: ~~February 15~~, 2014   April 31, 2014 BP

I Am _Zaire Paige Bey_
Zaire Paige –Bey
Natural Person
In Propria Persona
All Rights Reserved
C/O 236 BOB MASIA DRIVE
POST OFFICE BOX 2000
PINE CITY, NEW YORK 14871-2000