UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ZAIRE PAIGE-BEY,

                           Plaintiff,

                   - against -

CITY OF NEW YORK, *et al.*,

                          Defendants.

------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ DEC 1 2 2016 ★
BROOKLYN OFFICE

MEMORANDUM AND ORDER

13-cv-7300 (SLT)(RER)

**TOWNES, United States District Judge,**

*Pro se* plaintiff Zaire Paige-Bey ("Plaintiff") commenced this action on December 30, 2013, alleging numerous constitutional violations arising out of an incident on August 16, 2008. Defendants City of New York, Police Officer Rashan Lacoste, Assistant Prosecutor Darren Albanese, Former New York City Police Commissioner Raymond Kelly, Former New York City Mayor Michael Bloomberg, Former Brooklyn District Attorney Charles J. Hynes (collectively the "Defendants")[1] move to dismiss the Complaint for failure to state a claim pursuant to Federal

---

[1] The Complaint also names Police Officer David Lawrence as a defendant. Officer Lawrence was served on April 28, 2014, but appears to be unrepresented in this action and has neither answered the Complaint, nor joined the motion to dismiss filed on behalf of the moving Defendants.

Rule of Civil Procedure 12(b)(6). For the reasons explained below, Defendants' motion to dismiss is hereby **GRANTED in part and DENIED in part**.

I. **BACKGROUND**

The following facts are drawn from the Amended Complaint dated April 21, 2014 (the "Amended Complaint"), and the documents attached to the Amended Complaint, and are assumed to be true for the purposes of this memorandum and order. On August 16, 2008, Plaintiff was visiting his infant child on the second floor of 2050 Strauss Street in the Brownsville section of Brooklyn, New York, when he heard a loud disturbance on the first floor. Police Officer Rashan Lacoste ("Officer Lacoste") appeared on the second floor where he came upon and "began searching" Plaintiff. (Am. Compl. ¶ 21.) Lacoste did not have a warrant. (*Id.*) Police Officer David Lawrence ("Officer Lawrence") also came up to the second floor and, together with Officer Lacoste, "singled out" Plaintiff and brought him downstairs where other officers were in the process of searching the premises. (*Id.* ¶ 22-27.) Four pistols were recovered at the scene, along with a quantity of drugs. Plaintiff was handcuffed, along with three other men who were present on the premises. (*Id.* ¶ 25.)

When the search was complete, all four men were removed from the premises and taken to the 73rd Precinct. After being held for several hours, Officer Lacoste proceeded to question Plaintiff, without reading him Miranda warnings, allegedly telling him "there is no lawyer who can help you, only I can help you, help your self [sic], and if you don't help me, everything found in the house would be charged against you." (*Id.* ¶ 30.) Plaintiff stated he was innocent and requested to speak with an attorney. (*Id.* ¶32.) Plaintiff was then strip-searched and escorted to a holding cell. (*Id.* ¶32-33.) He was held "during the high humidity summer" in a room with no window or proper ventilation. (*Id.* ¶¶ 64, 80.) When Plaintiff asked for water, he was told by

2

Officer Lacoste "you will get it when you get to Rikers." (*Id.*, ¶34.) He received neither food nor water for approximately sixteen hours while in custody. (*Id.*, ¶ 64.) Plaintiff was then transferred to Kings County Central Booking in Downtown Brooklyn where he received water. (*Id.*, ¶ 80.) There, he was "confronted again to harsh and cruel, punishment being subjected to filthy condition[s] in the enclosed confinement, which resulted in mental and emotional distress[], not being able to eat, sleep, nor being able to make contact with his family." (*Id.*, ¶ 34.) Plaintiff further asserts that he was held "in a dirty confinement, that ha[]d no proper ventilation, nor air conditioning, or working facilities such as the toilet, and water fountain." (*Id.*, ¶ 69.) It is unclear whether this last description is of the 73rd Precinct, or Brooklyn Central Brooking.

Allegedly motived by Plaintiff's prior complaints of excessive force and "stop and frisk" practices (*id.*,¶ ¶45, 55), Lacoste and Lawrence prepared allegedly false charges relating to the incident, which resulted in a sixteen-count grand jury indictment on October 29, 2008, which charged Plaintiff with various degrees of possession of a weapon and possession of a controlled substance. (Indictment #10896/2008, Doc. 4-1, at 2-3, 7-13.) Although Plaintiff's allegations are far from precise, he appears to allege that officers Lacoste and Lawrence manufactured evidence that resulted in his conviction, presumably evidence concerning the guns or drugs found at the scene. To that end, Plaintiff alleges that the officers "unlawfully planted false evidence" causing him to be tried on "false charges." (¶48). On the basis of that evidence, the indictment was served on Plaintiff on December 5, 2008. (*Id.*, at 1.) The officers allegedly testified falsely before the grand jury and at two subsequent trials.[2] (*Id.*, ¶ 49, 89.) Plaintiff was acquitted of the charges. (Plaintiff's Aff. in Opp'n to Mot., Doc. 26-1, at 1.)

---

[2] Plaintiff has attached to the Amended Complaint transcripts from two separate hearings that appear to both relate to the indictment on August 16, 2008. The first transcript is from October

3

On December 30, 2013, Plaintiff commenced this action against Defendants, asserting numerous constitutional violations pursuant to 42 U.S.C. §§ 1983 and 1985, premised on the First, Fourth, Fifth, and Fourteenth Amendments. Liberally construed, these claims include First Amendment retaliation, false arrest and imprisonment, unreasonable searches, deliberate indifference, discrimination, and malicious prosecution.

Most of the claims arise out of Plaintiff's arrest, confinement, and interrogation on August 16, 2008, and other events leading up to the grand jury indictment issued on October 29, 2008. However, the malicious prosecution claims and related allegations of misconduct arise out of conduct during the subsequent prosecution on that indictment.

## II. ANALYSIS

### A. Legal Standard

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Rothstein v. UBS AG,* 708 F.3d 82, 90 (2d Cir.2013). Aside from the allegations in the complaint, a court can consider only "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Nor do legal conclusions and other naked assertions unsupported by facts. *Id.* To survive a motion to dismiss, a

---

18, 2010. (Doc. 4-1, at 107.) The second transcript is from April 6, 2011. (Doc. 4-1, at 105.) No trial transcripts or other evidence related to a trial appear in the record.

complaint must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). If a party has not "nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.*

### B. Timeliness

The statute of limitations for actions under § 1983 is the statute of limitations applicable to personal injury actions occurring in the state in which the federal court sits. *Dory v. Ryan,* 999 F.2d 679, 681 (2d Cir. 1993) (citing *Wilson v. Garcia,* 471 U.S. 261 (1985)). Since Section 214(5) of New York's Civil Practice Law and Rules provides a three-year statute of limitations for personal injury actions, the statute of limitations for actions brought in this Court pursuant to Section 1983 is three years. *Owens v. Okure,* 488 U.S. 235, 250-51 (1989); *Paige v. Police Dept. of City of Schenectady,* 264 F.3d 197, 199, n. 2 (2d Cir. 2001). The date on which an action accrues is governed by federal law, *see Ormiston v. Nelson,* 117 F.3d 69, 71 (2d Cir.1997), which provides that an action generally accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Beach,* 296 F.3d 76, 80 (2d Cir. 2002), cert. denied, 538 U.S. 922 (2003); *see also Singleton v. City of New York,* 632 F.2d 185, 192 (2d Cir. 1980) ("The crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action.") The rule is slightly different for false arrest and false imprisonment claims. These claims accrue when the alleged false arrest or imprisonment ends, which occurs at the time the plaintiff "becomes held pursuant to [legal] process—when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace v. Kato,* 549 U.S. 384, 389 (2007). However, New York's tolling rules apply. *Connolly v. McCall,* 254 F.3d 36, 40 (2d Cir. 2001) ("federal constitutional

claims, brought pursuant to 42 U.S.C. § 1983, are governed by New York's three-year statute of limitations for personal injury actions, as well as the state's tolling rules.")

Plaintiff commenced suit on December 30, 2013. Thus, in light of the three-year statute of limitations for Section 1983 claims, any claims that accrued before December 30, 2010 are untimely unless the claims are tolled according to New York law. New York law provides for both statutory and equitable tolling under certain circumstances. Statutory tolling, as codified in New York Civil Practice Law and Rules, acts to extend the time Plaintiff may file an action where, for example, the defendant is absent from the state at the time the action accrues, the plaintiff suffers from a disability, or the plaintiff has died. *See* N.Y.C.P.L.R. §§ 207, 208, 210. Case law also provides for equitable tolling, sometimes referred to as "equitable estoppel," which bars defendants from interposing a statute of limitations defense "where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action" and where plaintiff has reasonably relied on the misrepresentations. *Zumpano v. Quinn*, 6 N.Y.3d 666, 674, 849 N.E.2d 926, 929 (N.Y. 2006) (quoting *Simcuski v. Saeli*, 44 N.Y.2d 442, 449, 377 N.E.2d 713 (N.Y. 1978)). Equitable tolling is not available unless the plaintiff can "establish that subsequent and specific actions by defendants somehow kept [the plaintiff] from timely bringing suit." *Id.*

The time to file a Section 1983 claim can also be extended under the Continuing Violation Doctrine (the "CVD"), which provides an exception to the normal rule that a claim accrues when the plaintiff knows or should know of the injury giving rise to his claim. *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). When a Section 1983 claim challenges a discriminatory policy, the CVD will extend the limitations time until the last discriminatory act committed in furtherance of that policy occurs. *Id.* The Second Circuit has applied the doctrine

to Eighth Amendment deliberate indifference claims and has promulgated the following test: "the plaintiff must allege both the existence of an ongoing policy of [deliberate indifference to his or her serious medical needs] and some non-time-barred acts taken in the furtherance of that policy." *Id.* (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)) (internal quotation omitted, alterations in original). This test is meant to screen out "claims that challenge discrete acts of unconstitutional conduct or that fail to allege acts within the relevant statutory period that are traceable to a policy of deliberate indifference." *Id.* The CVD will not apply merely where a plaintiff "continues to feel the effects of a time-barred" act. *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999); *Gonzalez v. Hasty*, 802 F.3d 212, 221-23 (2d Cir. 2015).

Most of the events giving rise to Plaintiff's Constitutional claims occurred on August 16, 2008, and at other unspecified times leading up to the grand jury indictment, which issued on October 29, 2008. These include all of Plaintiff's claims arising out of his arrest and confinement on August 16, 2008, as well as claims regarding false charges filed against him and false testimony before the grand jury. Plaintiff was aware of the conditions of his confinement and improper searches on the day they occurred, August 16, 2008, which is therefore also the day these claims accrued. Plaintiff's false arrest and imprisonment claims accrued at his arraignment[3], which is also when the false charges claim accrued, since Plaintiff would have been present and have known of the charges. Additionally, Plaintiff must have known or should have known of the grand jury-related misconduct near in time to the issue of the indictment on October 29, 2008, and in any event, well before October 18, 2010, the date of a hearing on the indictment. (Doc. 4-1, at 107.) Thus, all claims premised Plaintiff's arrest and confinement,

---

[3] Plaintiff's papers make no mention of his arraignment, but it must have occurred within a few days of his arrest if charges were indeed filed against him, as Plaintiff asserts.

7

including any related Section 1985 conspiracy claims, accrued outside the limitations period, i.e. before December 30, 2010.

Further, there is no statutory or equitable basis for tolling these claims. No tolling provision of the N.Y.C.P.L.R. is applicable, and Plaintiff has made no allegations of any kind to suggest that he was prevented from filing a suit within three years by any misrepresentation or fraud of Defendants. The discrete nature of Plaintiff's arrest, confinement, interrogation, strip search, charging, and the grand jury testimony, make application of the CVD inappropriate. *See Gonzalez v. Hasty*, 802 F.3d 212, 220-24 (2d Cir. 2015) (holding that the CVD did not apply to First and Fifth Amendment claims based on discrete acts that occurred outside the limitations period). Therefore Plaintiff's claims arising out of his arrest and confinement on August 16, 2008 and the grand jury proceedings culminating on October 29, 2008, including his claims for retaliation, false arrest and imprisonment, unreasonable searches, discrimination, deliberate indifference, and conspiracy to commit the foregoing are untimely.[4]

Plaintiff's sole remaining claim for malicious prosecution did not accrue until Plaintiff was acquitted of the charges in the indictment. Such claims did not accrue until Plaintiff was acquitted of the charges in the indictment. *See Smith v. Campbell*, 782 F.3d 93, 100-101 (2d Cir. 2015) (explaining that retaliation claims accrue at the time of the retaliatory event, while Fourth Amendment malicious prosecutions claims accrue when the underlying criminal case ends in failure) (citing *Poventud v. City of New York*, 750 F.3d 121, 130-131 (2d Cir. 2014)). There is nothing in the record indicating the date Plaintiff was acquitted. However, Plaintiff affixed a

---

[4] To the extent that Plaintiff asserts claims against the city for a policy or practice allowing "discriminat[ion] against due process rights" by permitting officers to file false charges, the CVD does not toll the limitations period. The triggering event for this claim is the filing of false charges by the Officers and possibly also the allegedly false grand jury testimony. Subsequent instances of false testimony are merely the continued effects of these events, not additional acts in furtherance of the alleged policy.

8

hearing transcript dated April 6, 2011 marked with his indictment number. On that basis the Court will assume that Plaintiff was acquitted after that date, which is within the limitations period.

### C. Claims against Hynes and Albanese

Prosecutors are entitled to absolute immunity "from claims for damages arising out of prosecutor duties that are 'intimately associated with the judicial phase of the criminal process.'" *Parkinson v. Cozzolino*, 238 F.3d 145, (2001) (2d. Cir.2001) (quoting *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir.1996)). In determining whether a prosecutor is entitled to absolute immunity, courts employ a functional approach, which looks to the nature of the function that the prosecutor was performing at the time of the complained of actions. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). If counsel was acting in her role as an advocate, she is entitled to absolute immunity. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Functions that serve "in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [a prosecutor's] role as an advocate for the State" are unquestionably entitled to absolute immunity. *Buckley*, 509 U.S. at 273. On the other hand, if she was acting in an investigatory capacity, she is entitled only to the qualified immunity that is normally given to executive officials pursuing their duties. *Id.* (observing that qualified immunity is the norm for executive officers.) Conduct for which a prosecutor is absolutely immune includes "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Fitzsimmons*, 509 U.S. at 273. In addition, this absolute immunity "bars suit for malicious prosecution, even in the complete absence of even arguable probable cause." *Armatas v. Maroulleti*, No. 08–CV–310 (SJF)(RER), 2010 WL 4340437, at *12 (E.D.N.Y. Oct. 19, 2010) (citing *Bernard v. Cnty. of*

*Suffolk*, 356 F.3d 495, 502–05 (2d Cir.2004)); *see also Conte v. Cnty. of Nassau*, No. 06–CV–4746, 2010 WL 3924677, *16 (E.D.N.Y. Sept. 30, 2010) ("Assuming arguendo that there was no probable cause to continue the prosecution . . ., the County defendants are protected by absolute immunity with respect to the decision to continue the ongoing prosecution.").

Here, the Amended Complaint makes a number of allegations against Albanese and Hynes related to the handling of Plaintiff's prosecution on the indictment. Specifically, Plaintiff alleges: (1) Albanese and Hynes presented false evidence and testimony before the grand-jury and at trial (Am. Compl. ¶¶ 39, 55), (2) Albanese and Hynes failed to investigate the evidence and information submitted to them by the Officers before seeking charges against Plaintiff (*id.* ¶ 50), and (3) Albanese was malicious and aggressive with Plaintiff during trial, and was deliberately indifferent to Plaintiff's appearance at court in a prejudicial and embarrassing state, in restraints and without a belt, (*id.* ¶¶ 54, 65, 59).

All this alleged conduct relates directly to conduct that is "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430–31. First, absolute immunity shields prosecutors from claims they presented false evidence at court or to a grand jury. *Burns v. Reed*, 500 U.S. 478, 479; *Kent v. Cardone*, 404 F. App'x 540, 543 (2d Cir. 2011) ("A prosecutor is absolutely immune with respect to non-investigatory conduct before a grand jury."); *Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) (prosecutor absolutely immune from Section 1983 claims for presenting false evidence to grand jury). Second, whether or not Albanese and Hynes adequately "investigated" the evidence provided to them by Officers Lacoste and Lawrence, the evaluation of that evidence for the purpose of deciding whether to seek an indictment is an entirely judicial function for which they are entitled to absolute immunity. *Buckley*, 509 U.S. at 273. Plaintiff makes no allegations that Hynes or Albanese

10

performed investigatory functions for which they would not be entitled to immunity. *See Flagler v. Trainor*, 663 F.3d 543, 550 (2d Cir. 2011) (ADA not absolutely immune for gathering evidence by accessing domestic violence victim's voicemail without her consent). Third, Albanese's courtroom manner and tactics constitute conduct in the course of presenting a case to a court, and were well within his advocative functions for which he is absolutely immune. *See Parkinson v. Cozzolino*, 238 F.3d 145, 150 (2d Cir. 2001) (explaining the issue for absolute immunity is whether the prosecutor was functioning as an advocate, and noting "[t]he immunity attaches to [the prosecutor's] function, not to the manner in which he performed it.") (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir.1994)) (alterations in original). Thus, Hynes and Albanese are absolutely immune from Section 1983 liability for claims based on presentation of evidence to the grand jury or at trial, evaluation of evidence provided by Officers Lacoste and Lawrence, and Albanese's trial manner. All such claims against Hynes and Albanese must therefore dismissed.

### D. Claims against Hynes, Kelly, Bloomberg, and New York City

Plaintiff's remaining claims against District Attorney Hynes, Commissioner Kelly, Mayor Bloomberg, and New York City must also be dismissed for failure to state a claim. Plaintiff has failed to alleged facts that establish personal involvement by any remaining individual defendant or *Monell* liability as to the City.

Regarding the supervisory defendants, Plaintiff has failed to alleged facts establishing personal involvement. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991)); *accord, e.g., Ashcroft v.. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948

(2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") The Second Circuit has held that personal involvement of a supervisory defendant may be established in five ways:

1. [t]he defendant participated directly in the alleged constitutional violation,
2. the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong,
3. the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom,
4. the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or
5. the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[5] Plaintiff asserts that Brooklyn District Attorney Hynes: (1) was deliberately indifferent to "policies and practice of filing complaints falsely" despite knowledge of fabricated evidence (Am. Compl. ¶35), (2) "failed to investigate fully the evidence and information submitted" by Lacoste and Lawrence (*id.* ¶50), and (3) is liable for "gross negligence, by failure to supervise" and train Albanese sufficient to prevent his malicious prosecution (*id.* ¶98). With respect to Commissioner Kelly, Plaintiff asserts, (1) as commissioner, Kelly "bears responsibility" for the officers' actions (*id.* ¶35), and (2) he is liable for gross negligence for failing to discipline law enforcement personnel (*id.* ¶¶ 35, 97). With respect to Mayor Bloomberg, Plaintiff asserts, (1) that he acted with deliberate indifference

---

[5] Since the Supreme Court stated in *Iqbal* that "purpose rather than knowledge is required to impose . . . liability on . . . an official charged with violations arising from his or her superintendent responsibility, 556 U.S. 622, a number of district courts in the Second Circuit have held that only the first and third factors are valid bases for establishing personal involvement of supervisory defendants. *See, e.g., Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801, 2009 U.S. Dist. LEXIS 54141, at * 20 (S.D.N.Y. June 26, 2009), aff'd, 387 Fed. App'x 55 (2d Cir. 2010); *Spear v. Hugles*, No. 08 Civ. 4026, 2009 U.S. Dist. LEXIS 62055 (S.D.N.Y. July 20, 2009). The Second Circuit has not specifically decided the issue. See Doe v. Whidden, 557 F. App'x 71 n.1 (2d Cir. 2014); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013); *Reynolds v. Barrett*, 685 F.3d 193, 206 n. 14 (2d Cir. 2012). Here, the Court assumes but does not decide that each of the five factors are still a valid means for establishing involvement.

toward Plaintiff despite knowledge of a policy or practice of discrimination by achieving convictions through false testimony (*id.* ¶ 102-04), and (2) that he is liable for gross negligence for failing to discipline law enforcement personnel (*id.* ¶ 97). None of these assertions rest on factual allegations that establish any of the five *Coughlin* factors. Rather, Plaintiff essentially asserts "threadbare recitals" of the factors themselves and his assertions are supported by "mere conclusory statements." *Iqbal*, 556 U.S. at 678. More specifically, he has not alleged facts demonstrating that former District Attorney Hynes, Commissioner Kelly, or former Mayor Bloomberg participated in or plausibly knew of any violation of his rights. Nor has he alleged facts establishing the presence of a custom or policy, negligent supervision, or deliberate indifference to information indicating that unconstitutional acts were occurring. Accordingly, Plaintiff has failed to state a claim against these individual defendants.

Plaintiff has for similar reasons failed to state a claim against the City. Under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978), a municipality may be held liable under § 1983 only when a "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." "[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)) (internal quotations marks omitted). To show a policy, custom, or practice, the plaintiff need not identify an express rule or regulation." *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 226 (2d. Cir. 2004). Rather, it is "sufficient to show ... that a discriminatory practice of municipal officials was so 'persistent or widespread' as to constitute 'a custom or usage with the force of

law,' or that a discriminatory practice of subordinate employees was 'so manifest as to imply the constructive acquiescence of senior policy-making officials.'" *Id.* (internal citations omitted). Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N. Y. 2008). Here, regarding the City, Plaintiff asserts (1) "[t]he administrative processing investigative prongs intentionally distortions of truth seeking process" [sic] (*id.* ¶ 97), (2) that the City "acted with [i]ndifference toward [Plaintiff] for the legislation it acted upon, which the discrimination against [Plaintiff] on the bases of his non-suspect classification" [sic] (*id.* ¶94), and (3) that the city acted with deliberate indifference to officers Lacoste and Lawrence's false testimony and malicious prosecution (*id.* ¶95). These conclusory allegations, where coherent, are devoid of facts establishing a custom or policy that caused Plaintiffs alleged harms. Plaintiff has therefore failed to state a claim against the City.

### E. Remaining claims against Officers Lacoste and Lawrence

The only cause of action not resolved by the above analyses is Plaintiff's claim for malicious prosecution as against Lacoste and Lawrence. To state a Section 1983 claim for malicious prosecution Plaintiff must show a violation of his rights under the Fourth Amendment and establish the elements of a malicious prosecution claim under state law. *Manganiello v. City of N.Y.*, 612 F.3d 149, 160–61 (2d Cir.2010) (citations omitted). In New York, the elements of malicious prosecution are (1) the initiation of a criminal proceeding, (2) its termination in favor of the accused, (3) lack of probable cause, and (4) actual malice. *Martinez v. City of Schenectady*, 97 N.Y.2d 78, 84, 735 N.Y.S.2d 868, 761 N.E.2d 560 (2001).

When liberally construed and assumed to be true, the allegations against Lacoste and Lawrence sufficiently state a claim for malicious prosecution. Plaintiff alleges that the two

officers "singled [him] out" in retaliation for his complaint of excessive force and stop and frisk procedures and entered his house without a warrant. (¶¶20-22). With that motivation they "unlawfully planted false evidence" (which the Court assumes involved either the guns or drugs at issue) and filed false arrest reports and supporting information, thereby causing Plaintiff to be tried on "false charges." (¶48). Later, after indictment, the officers provided false testimony concerning the planted evidence in front of both the grand jury and at trial. (¶¶ 45, 49-50, 55, 89).

These allegations establish that the officers "initiated" a criminal proceeding for the purposes of stating a malicious prosecution claim. Where arresting police officers engineer false evidence and perpetuate false charges as witnesses in court, as the officers are alleged to have done here, they "initiate" a criminal proceeding for the purposes of stating a malicious prosecution claim. *See, .e.g., Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (holding that defendant officer initiated prosecution by preparing allegedly false documents and forwarding them to prosecutors); *Jouthe v. City of New York*, No. 05–1374, 2009 WL 701110, at *11 (E.D.N.Y. Mar. 10, 2009) ("A police officer may also be held liable for malicious prosecution if he provides false information to the prosecutor that influences a decision whether to prosecute.") (internal quotation marks omitted); *Stewart v. City of New York*, No. 06 Civ. 15490, 2008 WL 1699797, at *7 (S.D.N.Y. Apr. 9, 2008) (denying summary judgment against officer where dispute of fact existed as to whether undercover officer testified falsely to grand jury and gave false information to prosecutor); *Crespo v. New York City Police Com'r*, 930 F. Supp. 109, 117-18 (S.D.N.Y. 1996) (allegations that officer gave false testimony to grand jury sufficient to defeat summary judgment.)

In arguing to the contrary, the Defendants rely on a presumption that does not apply here and ignore or construe the allegations too narrowly. The Defendants contend that a presumption arising from New York law requires the conclusion that the prosecutor and not the arresting officers "initiated" the criminal proceeding. While Defendants are correct that "New York law imposes a presumption that a prosecutor exercises his own independent judgment in deciding to prosecute," *Gilman v. Marsh & McLennan Cos., Inc.* 868 F. Supp. 2d 118, 128 (S.D..N.Y. 2012), they overlook that the presumption generally does not apply "in malicious prosecution actions alleging that a police officer provided false information to a prosecutor" and "where a police officer is alleged to have maliciously misled a prosecutor." *Cameron v. City of New York*, 598 F.3d 50, 63-64 (2d Cir. 2010). Plaintiff's allegations that the officers planted evidence and perpetuated false testimony to the grand jury and at trial are sufficient at this stage of the litigation to meet the first element of a malicious prosecution claim.

Beyond contending that the officers did not "initiate" the criminal proceeding against Plaintiff, the Defendants do not argue and the Court does not find that Plaintiff has otherwise failed to state a claim against Lacoste and Lawrence for malicious prosecution. Plaintiff alleged that he was acquitted (Plaintiff's Aff. in Opp'n to Mot., Doc. 26-1, at 1.), and the above-discussed allegations of evidence tampering and false testimony are sufficient to suggest both malice and an absence of probable cause. *See Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (lack of probable cause generally raises an inference of malice). For these reasons the Court concludes that Plaintiff has stated a claim for malicious prosecution against both Lacoste and Lawrence under Sections 1983 and 1985.

## III. CONCLUSION

For the above reasons, Defendants' motion to dismiss is **GRANTED in part and DENIED in part**. (Rec. Doc. 27). All Plaintiff's claims except his malicious prosecution claims against Lawrence and Lacoste are hereby **DISMISSED**. Plaintiff's claims arising from his arrest and incarceration are untimely, his claims against Hynes and Albanese are barred by prosecutorial immunity, and his allegations as to the City, Hynes, Kelly, and Bloomberg are also too conclusory to state a claim. The malicious prosecution claims against Lawrence and Lacoste will proceed before Magistrate Judge Reyes for discovery as needed.

**SO ORDERED**

/s/ Sandra L. Townes

SANDRA L. TOWNES

United States District Judge

Dated: December 7, 2016

Brooklyn, New York

17